IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br><br>STANISLAW KWAK | Case No. 22 CR 577<br><br>Magistrate Judge Sunil R Harjani |

## MEMORANDUM OPINION AND ORDER

Before the Court is the United States government's request to certify Stanislaw Kwak for extradition pursuant to 18 U.S.C § 3184. [18]. For the reasons stated below, the government's motion is granted and the Court certifies to the Secretary of State the extradition of Stanislaw Kwak.

## BACKGROUND

The Government of the Republic of Poland ("Poland") has requested the extradition of Stanislaw Kwak pursuant to the Extradition Treaty between the United States and Poland, signed on July 10, 1996, which entered into force on September 17, 1999.[1] Kwak is charged by the District Prosecutor's Office in Nowy Targ, Poland with committing the offense of vehicular manslaughter in a state of insobriety in violation of Article 177, Paragraph 2 and Article 178, Paragraph 1 of the Polish Criminal Code. On October 26, 2022, the United States government, through the Department of Justice, filed a Complaint requesting that this Court issue a warrant for the arrest of Stanislaw Kwak in accordance with 18 U.S.C. § 3184 and the Treaty, and the warrant

---

[1] The Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., July 10, 1996, S. TREATY DOC. NO. 105-14 (1997), and the Agreement Between the United States of America and the Poland on the application of the Extradition Treaty Between the United States of America and the Republic of Poland signed 10 July 1996, U.S.-Pol., June 9, 2006, S. TREATY DOC. NO. 109-14 (2006) (collectively, the "Treaty").

1

was subsequently issued by this Court. Doc. 1. The Complaint stated that the Government of Poland had submitted a formal request through diplomatic channels for the extradition of Kwak pursuant to the Treaty to face criminal charges pending against him in his native country.

For background, on April 11, 1999, the charging documents assert that Kwak was the driver in a vehicular accident while in a state of insobriety that resulted in the death of a passenger, Antoni Otreba. On May 24, 1999, the District Court of Nowy Targ issued a pretrial detention order for Kwak, and on June 9, 1999, the District Prosecutor's Office issued an all-points bulletin notice to search and arrest Kwak. On May 19, 2015, the District Court of Nowy Targ re-issued the all-points bulletin notice to search and arrest Kwak. Doc. 1-1 at 51-53. On October 5, 2016, Polish officials filed a request for pretrial detention and extradition. *Id*. at 48-50. Poland asserts that Kwak fled to evade law enforcement and avoid prosecution. Doc. 19 at 3. Consistent with the extradition process set forth in 18 U.S.C. § 3184, an in-person hearing was held on February 28, 2023 to determine whether the evidence presented by the Polish government was "sufficient to sustain the charge" under the provisions of the Treaty and consequently to "certify the same" to the Secretary of State. Doc. 30. Kwak was present with the assistance of counsel and a Polish interpreter. The parties did not call any witnesses, but presented oral argument on the matter. The Court indicated that it would issue a written ruling on the government's request for certification.

## **DISCUSSION**

Where a treaty for extradition exists between the United States and a foreign government, 18 U.S.C. § 3184 provides the following two-step process in an extradition matter. First, the government files a complaint in federal court charging a person with having committed crimes covered by the applicable treaty in the jurisdiction of the foreign government, and then the magistrate judge issues a warrant for that person's arrest and hears evidence as to the charges. *See*

18 U.S.C. § 3184; *In re Extradition of Jarosz*, 800 F. Supp. 2d 935, 939 (N.D. Ill. 2011). Second, if the magistrate judge "deems the evidence sufficient to sustain the charge[s]," he "shall certify [his findings] ... to the Secretary of State." *Id*. The Court's role is limited to determining if extradition is proper after weighing five factors, namely, whether (1) the judicial officer has jurisdiction to conduct the extradition proceedings; (2) the Court has jurisdiction over the defendant; (3) the relevant treaty is in full force and effect; (4) the crime for which extradition is requested is covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause that the defendant committed the offense. *Matter of Extradition of Schumann*, 2018 WL 4777562, at *2 (N.D. Ill. Oct. 3, 2018); *Noeller v. Wojdylo*, 922 F.3d 797, 802 (7th Cir. 2019) (explaining that "the judicial role is narrow" in the extradition process). If certified, the Secretary of State decides whether to surrender the individual to the requesting foreign government. *Matter of Assarsson*, 670 F.2d 722, 725 (7th Cir. 1982) (citing 18 U.S.C. § 3186). The Secretary of State exercises "broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not." *In re Extradition of Jarosz*, 800 F. Supp. 2d at 939 (quoting *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 829 (11th Cir. 1993)).

Kwak asserts two reasons why the legal requirements for the certification of extradition have not been met, both of which challenge the fourth factor—whether the crime for which extradition is requested is covered by the treaty. First, Kwak argues that neither Poland nor the United States has shown dual criminality procedurally and substantively. Second, Kwak claims that the statute of limitations bars extradition. Additionally, Kwak asserts that heightened scrutiny into the political motivations behind this extradition request is warranted. However, having reviewed the Treaty, the parties' submissions, and the evidence provided by the Polish

government, the Court concludes that each of the certification factors has been met.

**A. The Four Uncontested Factors Are Satisfied**

In this case, Kwak does not contest the first three and the fifth factors. For the following reasons, the Court finds that the requirements for these uncontested factors are met.

### 1. The Magistrate Judge has Jurisdiction over the Matter

First, federal magistrate judges are explicitly authorized by 18 U.S.C. § 3184 to conduct the extradition proceedings. *See* 18 U.S.C. § 3184 ("any magistrate judge authorized so to do by a court of the United States" to hear extradition proceedings); *see also Matter of Extradition of Schumann*, 2018 WL 4777562, at *3 ("federal magistrate judges are specifically included among the judicial officers authorized by the extradition statute to consider extradition"); *Matter of Extradition of Lebiedzinski*, 2021 WL 5232735, at *2 (N.D. Ill. Nov. 10, 2021) (same). Kwak also does not dispute this factor. Thus, the Court has jurisdiction over the extradition proceedings.

### 2. The Court has Jurisdiction over the Respondent

Turning to the second factor, there is no dispute that Kwak was found, arrested, and is now in federal custody within the Northern District of Illinois. *See* Doc. 17 (arrest warrant return). Indeed, 18 U.S.C. § 3184 provides that a magistrate judge "may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged." 18 U.S.C. § 3184; *see also In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 882 (N.D. Ill. 2006) ("The extradition statute further provides that jurisdiction will apply to any person found within the jurisdiction of the court."). As such, this Court has jurisdiction over Kwak to determine whether he is subject to extradition.

### 3. The Treaty is in Full Force and Effect

Third, extradition is limited to cases "in which a treaty is in force between the requesting

country and the United States." *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 882. Here, the government has provided a declaration from an attorney advisor in the Office of the Legal Advisor for the Department of State, dated May 10, 2022, attesting that the Treaty is in full force and effect between the United States and Poland. Doc. 1-1 at 1-2. Kwak does not dispute the declaration, nor does he challenge the validity or application of the Treaty. Therefore, this Court determines that there is a valid extradition treaty in full force and effect between the United States and Poland.

### 4. Probable Cause Exists

Finally, Kwak does not contest the final factor—that there is sufficient evidence to support a finding of probable cause that he committed the offense charged by Poland. Article 9(3)(c) of the Treaty requires Poland to provide enough evidence to justify committing Kwak for trial had the offense been committed in the United States or Illinois, *see* Doc. 1-1 at 21-22, leaving this Court to apply a familiar probable cause standard. Specifically, "the magistrate's role is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Noeller*, 922 F.3d at 803 (internal citations and quotations omitted); *Matter of Extradition of Lebiedzinski*, 2021 WL 5232735, at *5 ("Extradition decisions offer no opinion on the guilt or innocence of the individual whose extradition is sought and do not decide the 'punishability' of the accused, only his or her 'prosecutability.'") (internal citations and quotations omitted). Evidence of probable cause can be based on authenticated documentary evidence or written statements by foreign prosecutors or judges summarizing the evidence expected to be used. *Rice v. Ames*, 180 U.S. 371, 375-76, (1901).

Given the various pieces of evidence provided to support Poland's extradition request, the Court finds there is competent evidence to support a finding of probable cause to extradite. *Noeller*, 922 F.3d at 803. In support of its extradition request, Poland submitted authenticated documentary

5

evidence. First, Poland provided testimony of two eyewitnesses that witnessed Kwak drive by them erratically and crash into a concrete wall. Doc. 1-1 at 48-49. Both witnesses described the events leading up to the accident, including how they noticed the vehicle driving from side to side at an excessive speed, saw it hit the "wall foundation," watched the individuals get out of the vehicle, and recognized both the passenger that died and Kwak. *Id.* Second, Poland included testimony from a third witness, Wladyslaw Gal, who was in the vehicle with Kwak, and who testified that Kwak had consumed vodka prior to driving and that Kwak was the driver when the vehicle crashed, killing Otreba. *Id.* at 49, 71-77. Further, Poland attached evidence of Kwak's blood alcohol level (1.9 per mile alcohol or .19% under United States standards) at the time of the charged offense. *Id*. at 48-49, 51, 53. The Court's finding of probable cause is supported by multiple witnesses, including the passenger that was in the vehicle at the time of the alleged offense. One of the witnesses also positively identified Kwak from photographs as the perpetrator of the accident in which Otreba was killed. *Id*. at 68; 75. Specifically, a photograph of Kwak was presented to Gal who stated, "I had known Stanislaw Kwak for many years, we used to be good friends, so I am able to accurately identify his photograph." *Id*. at 75. Kwak also does not contest this factor. Thus, the Court turns to the disputed factors.

### B. The Crime for which Extradition is Requested is Covered by the Treaty

Regarding the fourth factor, Kwak argues that Poland and the United States have not met the requirements for certification of extradition because dual criminality has not been shown procedurally and substantively, and the statute of limitations bars extradition. The Court disagrees for the following reasons.

#### 1. The Government has Established Dual Criminality

First, the Court addresses Kwak's argument that Poland has not shown dual criminality for

6

procedural reasons because Poland did not comply with Article 9 of the Treaty. Doc. 24 at 5. Article 9 of the Treaty is entitled "Extradition Procedures and Documents." Doc. 1-1 at 21. Paragraph 2 lists the documents to be submitted in support of an extradition request. *Id.* An extradition treaty "should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them." *Factor v. Laubenheimer*, 290 U.S. 276, 293–94; *see also Noeller*, 922 F.3d at 803 (explaining liberal construction of extradition treaties). According to Kwak, the extradition request does not comply with Paragraph 2(c), which requires a request for extradition to be supported by "the text of the law describing the essential elements of the offense for which extradition is requested."

Here, the extradition request and supporting documents in the present case were attached to the Complaint. *See* Doc. 1-1. The extradition request transmitted from the Embassy of the Republic of Poland to the United States Department of State requests the pretrial detention and extradition of Kwak because he is suspected of committing an offense under Article 177, paragraph 2 of the Criminal Code in relation to Article 178, paragraph 1 of the Criminal Code (traffic accident resulting in death while being under the influence of alcohol). *Id*. at 3. That request is sufficient because it includes a copy of the text of Articles 177 and 178 in Kwak's native language, Polish. *Id*. at 44. Poland also provided a certified translation of the text of Articles 177 and 178 in English. *Id.* at 55. In particular, Article 177, paragraph 1 states, "Any person who violates, even if unintentionally, the safety regulations in road, water or air traffic, and thus unintentionally causes an accident in which another person suffers injury, as specified in article 157 § 1, will be liable to imprisonment of up to 3 years." *Id*. The translation of the text details the essential elements of the offense as required by Article 9(c).

Kwak also claims that the extradition request fails to satisfy dual criminality because it

does not set forth the text of the comparable Illinois statute. Doc. 24 at 5. However, Kwak does not cite any section of the Treaty that imposes such a requirement. Indeed, no portion of Article 9 explicitly requires the extradition request to include the comparable Illinois state or federal statute. *See* Doc. 1-1 at 21. Moreover, the government has provided comparable statutes in its memorandum of law, as further discussed below. *See supra* at 8-10. As such, the extradition request complies with the procedural requirements for accompanying materials detailed in the Treaty.

Turning to Kwak's substantive argument regarding dual criminality, Article 2 of the Treaty provides that "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or more severe penalty." Doc. 1-1 at 17. In short, for an offense to be covered by an extradition treaty, the charged offense must be a crime in both Poland and the United States. *See Factor*, 290 U.S. at 298-300. In assessing the duality of the crimes charged in an extradition proceeding, the Court should look to the description provided by Poland to decide whether that conduct would be criminal "under federal statutes, the law of the state where the accused is found, or the law of the preponderance of the states." *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1114 (7th Cir. 1997). "The Court will not simply look for common names, but will assess what charges would be forthcoming had the facts alleged occurred within a domestic jurisdiction." *In re Rodriguez Ortiz*, 444 F. Supp. 2d at 883; *see also Collins v. Loisel*, 259 U.S. 309, 312 (1922) ("It is enough if the particular act charged is criminal in both jurisdictions.").

In this case, the government sufficiently demonstrated dual criminality because driving while in an intoxicated state and killing another is outlawed in both Illinois and Poland and is punishable by more than one year in prison in both countries. Doc. 19 at 12. Poland alleges that

8

Kwak's conduct violated Article 177, Paragraph 2 and Article 178, Paragraph 1 of the Polish Criminal Code. The certified translation for Article 177, Paragraph 2 states, "[i]f in consequence of the accident the death of a human being or his/her gross injury occurs, the perpetrator will be liable to imprisonment of 6 months to 8 years." Doc. 1-1 at 55. The translation for Article 178, Paragraph 1 states, "[w]hile sentencing the perpetrator who has committed crime referred to in article 173,174, or 177, under the influence of alcohol or narcotic drug or has fled from the scene of crime, the court will adjudicate imprisonment provided for the crime concerned, from the bottom limit prescribed by law increased by half, to the top limit prescribed by law increased by half." *Id*.

The government has identified two Illinois state criminal statutes and one federal statute that address comparable crimes to the one at issue in Poland. Doc. 19 at 9-11. Beginning with the Illinois Vehicle Code, Section 11-501 provides, "[a] person shall not drive or be in actual physical control of any vehicle within this State while: (1) the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11-501.2; [or] (2) under the influence of alcohol[.]" 625 ILCS 5/11-501(a)(1)-(2). If the defendant "in committing a violation of subsection (a) was involved in a motor vehicle accident that resulted in great bodily harm or permanent disability or disfigurement to another, when the violation was a proximate cause of the injuries[,]" then such defendant is guilty of a Class 2 felony, and "shall be sentenced to: (i) a term of imprisonment of not less than 3 years and not more than 14 years if the violation resulted in the death of one person[.]" *Id*. at 501(d)(1)(F); (d)(2)(G). Additionally, pursuant to the Illinois Criminal Code 720 ILCS 5/9-3 titled "Involuntary Manslaughter and Reckless Homicide," "[a] person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause

9

the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly . . ." 720 ILCS 5/9-3(a). Involuntary manslaughter is a Class 3 felony, 720 ILCS 5/9-3(d), which carries a sentence of not less than two years and no more than five years, 730 ILCS 5/5-4.5-40(a). Turning to the federal statute, the United States Code 18 U.S.C. § 1112 titled "Manslaughter" defines involuntary manslaughter as the following: "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death[,]"the crime is punishable with up to eight years imprisonment, and applies in the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 1112(a); (b).

In sum, Kwak's alleged crime is punishable in Poland, Illinois, and the United States with sentences of imprisonment. As required by the Treaty, Kwak's alleged crime carries a penalty with a "deprivation of liberty for a maximum period of more than one year or more severe penalty." Doc. 1-1 at 17. Specifically, the following maximum penalties are relevant and sufficient to satisfy this extradition factor: eight years under Article 177, Paragraph 2 of the Polish Criminal Code; twelve years under Article 178, Paragraph 1 of the Polish Criminal Code; fourteen years under the Illinois Vehicle Code; five years under the Illinois Criminal Code; and eight years under the United States Code. Accordingly, the crime for which extradition is sought is covered under the terms of the Treaty because the charged offense is a crime in both Poland and the United States with more than a maximum period of one year. *See Factor*, 290 U.S. at 298-300.

### 2. The Statute of Limitations has not Expired

Second, the statute of limitations does not bar extradition. Under principles of extradition law, the Court affords deference to the requesting country's interpretation of its own laws. *See, e.g., Grin v. Shine*, 187 U.S. 181, 190 (1902) ("it can hardly be expected of us that we should

become conversant with the criminal laws of [the requesting country]"); *Noeller*, 922 F.3d at 805 ("extradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law"); *Matter of Assarsson*, 635 F.2d at 1244 ("the chance of error is much greater when we try to construe the law of a country whose legal system is much different from our own"). In its extradition request, Poland provided the relevant statute of limitations provisions, Articles 101 and 102, and explained that the limitations period is twenty-five years in this case. Doc. 1-1 at 55; 84. Article 101 of the Polish Criminal Code provides the statute of limitations for crimes committed, including offenses under Articles 177 and 178. *Id.* Article 102 then grants extensions of the statutes of limitations if proceedings have been commenced within the period referred to in Article 101. *Id.* In a statement submitted on January 29, 2020, a Polish prosecutor explained that "[d]ue to the fact that the offense of which the suspect Stanislaw Kwak is accused is punishable under Polish law by up to 12 years' imprisonment and the proceedings in the case were initiated by the decision of 11 April 1999 - the statute of limitations of punishment in the present case will be 11 April 2024." *Id*. at 84.

      Kwak incorrectly interprets Polish law. According to Kwak, the crime he is alleged to have committed under Articles 177 and 178 has a 15-year statute of limitations because the instant offense was committed on April 11, 1999 and the Polish officials did not file a request for pretrial detention and extradition until October 5, 2016. Doc. 24 at 6. By disputing the statute of limitations of the Polish Criminal Code, Kwak first asks this Court to reject Poland's analysis and calculations. However, the Court is mindful of the deference to which decisions of a foreign government are entitled in extradition matters. *See Noeller*, 922 F.3d at 805; *Matter of Assarsson*, 635 F.2d at 1244. As such, this Court affords deference to Poland's interpretation of its own laws and statutes of limitations, which concluded that the statute of limitations has not expired.

11

Even so, based on this Court's review of the evidence, proceedings may have commenced as early as the date of the offense on April 11, 1999, which is within the period referred to in Article 101. At oral argument, the government explained that in Poland, the initiation of an investigation on the date of the crime constitutes the start of criminal proceedings. However, even if the Court were to not accept that representation, at the latest, proceedings definitely commenced by May 24, 1999, when the District Court of Nowy Targ issued a pretrial detention order for Kwak, which is also within the 15-year period referred to in Article 101. Pursuant to Article 102, because the proceedings commenced before the initial 15-year statute of limitations expired, ten years were added to the initial limitations period. Doc. 1-1 at 55 (Article 102 states, "[i]f proceedings have been commenced within a period referred to in article 101, then the offenses described in article 101 § 1 will cease to be punishable on expiry of 10 years . . ."). Given that proceedings commenced either on April 11, 1999 or May 24, 1999 (adding an additional ten years to the statute of limitations), the Court finds that the statute of limitations will run by April 11, 2024 or May 24, 2024. Therefore, the crime for which extradition is sought is covered under the Treaty, under either start date, because the statute of limitations has not expired and will not expire until 2024.

### 3. This Court does not Consider Politically-related Policy Concerns

In evaluating the five factors to determine if extradition is proper, the Court does not consider policy concerns, such as the independence of the judiciary and prosecutors and alleged corruption in the defendant's native country. Under the rule of non-inquiry, the Secretary of State has the sole authority to consider any matters raised other than the five factors related to the certification of extradition. *See Eain v. Wilkes*, 641 F.2d 504, 513 (7th Cir. 1981) ("it is within the Secretary of State's sole discretion to determine whether or not a country's requisition for extradition is made with a view to try or punish the fugitive for a political crime, *i.e.*, whether

12

the request is a subterfuge."); *Noeller*, 922 F.3d at 808 ("the executive branch has sole authority to consider such humanitarian considerations in deciding on extradition requests"). It is up to the Secretary of State to weigh any defenses the defendant raises touching on international relations, such as "contentions that an extradition request is politically motivated, that the requesting state's justice system is unfair, or that extradition should be denied on humanitarian grounds." *In re Extradition of Noeller*, 2017 WL 6462358, at *2 (N.D. Ill. Dec. 19, 2017). Indeed, magistrate judges are precluded from considering such policy considerations. *See, e.g.*, *In re Extradition of Salas*, 161 F.Supp.2d 915, 927 (N.D. Ill. 2001) ("The prevailing case law is to the effect that an extradition detainee's claim that he will be mistreated, denied a fair trial, deprived of his constitutional and human rights, or even deprived of his life if returned to the requesting sovereign is not a proper matter for consideration by the certifying Magistrate Judge.").

In the present case, Kwak claims that heightened scrutiny into the political motivations behind this extradition request is warranted. Doc. 24 at 7. Kwak relies on statements concerning Polish legislation and their "law and Justice party" from the United States Department of State in 2017, European Union bodies generally, the American Bar Association in March 2019, and a fall 2020 publication of the Bolch Judicial Institute at Duke Law School. *Id.* at 7-9. Kwak's theory is that Poland's judiciary lacks independence, and the "integrity and independence of prosecutors" have been under siege. *Id*. However, the two-step process created by 18 U.S.C. § 3184 and the settled rule of non-inquiry limits the Court's role to determining if extradition is proper after weighing the five factors. *Matter of Extradition of Schumann*, 2018 WL 4777562, at *2. The five factors do not include policy concerns, such as the ones currently raised by Kwak. Rather, policy concerns are reserved for the second step, the executive branch, where the Secretary of State has sole authority to consider other factors affecting the defendant, foreign relations, and humanitarian

13

considerations. *In re Extradition of Jarosz*, 800 F. Supp. 2d at 939. Because Kwak's arguments regarding alleged corruption and impropriety in Poland relate to issues of fairness in a foreign justice system and not the requirements for certification, Kwak must direct these concerns to the Secretary of State.

## CONCLUSION

For the foregoing reasons, pursuant to 18 U.S.C § 3184 and the Treaty between the United States and Poland, the Court certifies Kwak's extradition. The Court finds and certifies to the Secretary of State as follows:

(1) This Court has jurisdiction over, and the undersigned is authorized to conduct, extradition proceedings pursuant to Title 18 U.S.C. § 3184;

(2) This Court has personal jurisdiction over Stanislaw Kwak, found and arrested on November 3, 2022, in the Northern District of Illinois pursuant to a complaint filed by the United States in response to the request of Government of Poland for the arrest and extradition of Kwak;

(3) The extradition treaty between the United States and the Government of Poland was in full force and effect at all times relevant to this action;

(4) The Stanislaw Kwak sought by the Polish authorities and Stanislaw Kwak arrested in this District with a view toward extradition and brought before this Court are one and the same person;

(5) The Fugitive is accused in Poland of vehicular manslaughter in a state of insobriety in violation of Article 177, Paragraph 2 and Article 178, Paragraph 1 of the Polish Criminal Code. The Government of Poland has jurisdiction over this criminal conduct;

(6) The Treaty, pursuant to Article 2 of the Annex, encompasses the offense for which the Fugitive has been accused and for which extradition is sought;

(7) The Government of Poland submitted documents that were properly authenticated and certified in accordance with Article 10 of the Annex. Those documents include the pertinent text of the offenses for which extradition is sought;

(8) Probable cause exists to believe that the Fugitive before this Court, the same person identified in the extradition request from the Government of Poland, committed the offense for which extradition is sought;

(9) The evidence before this Court is sufficient to justify the Fugitive's arrest and committal

14

for trial had the alleged offenses occurred in the United States.

Accordingly, the court hereby certifies to the Secretary of State that the evidence is sufficient to sustain the charges under the provisions of the Treaty such that a warrant may issue upon the requisition of the proper authorities of Poland for the surrender of Stanislaw Kwak to their custody. It is further ordered that Stanislaw Kwak remain committed to the custody of the United States Marshal pending final decision on extradition and surrender by the Secretary of State pursuant to 18 U.S.C. §§ 3184, 3186.

I further order that the Clerk of this Court forward a certified copy of this Certification and Committal for Extradition, together with a copy of the evidence presented in this case, including the formal extradition documents received in evidence and any testimony received in this case, to the Secretary of State (to the attention of the Office of the Legal Adviser).

**SO ORDERED.**

Dated: March 14, 2023

_____
Sunil R. Harjani
United States Magistrate Judge